**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No. 19-0314 (MAS) |
| v. | **MEMORANDUM OPINION** |
| JERRY DORSEY. | |

**SHIPP, District Judge**

This matter comes before the Court on Defendant Jerry Dorsey's ("Dorsey") Motion for Compassionate Release/Reduction in Sentence under the First Step Act (the "Act"), 18 U.S.C. § 3582(c)(1)(A). (ECF No. 54.) The United States of America (the "Government") opposed (ECF No. 56), and Dorsey replied (ECF No. 60). Dorsey also filed letter correspondence related to the Motion. (ECF No. 61.) The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1, which applies to criminal cases under Local Criminal Rule 1.1. For the reasons below, the Court denies Dorsey's Motion.

**I.   BACKGROUND**

Dorsey was charged in a two-count indictment with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), (2). (Indictment 1-2, ECF No. 12.) Dorsey pleaded guilty to a Superseding Information charging only the § 922(g)(1) violation. (Plea Agreement 1, ECF No. 33; Superseding Information 1, ECF No. 29.) The Plea Agreement was pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and was made contingent on the Court imposing a sentence of 120 months' imprisonment. (*See* Plea Agreement 1.) The Court accepted

the Plea Agreement and sentenced Dorsey to the agreed-upon sentence of 120 months' imprisonment. (*See generally* J., ECF No. 51.)

After his initial arrest, Dorsey was incarcerated from December 4, 2018, until May 28, 2019, when he was released on a $100,000 bond. (ECF Nos. 16-18.) Dorsey was subsequently arrested for violating the conditions of his release. (ECF Nos. 37-38.) Dorsey was remanded at sentencing and is in the custody of the Bureau of Prisons ("BOP"). (Gov't's Opp'n Br. 2, ECF No. 56.) Dorsey is incarcerated at the Federal Correctional Institute in Bennettsville, South Carolina ("FCI Bennettsville"), and his projected release date is November 24, 2027. (*Id.*) As of the date of this Memorandum Opinion, Dorsey has completed less than 50% of his sentence. (*See id.*)

After he accepted the Plea Agreement but before he was sentenced, Dorsey requested a reduction in sentence based on "the COVID-19 [p]andemic and its effect on his sentencing delay." (ECF No. 43.) The Court denied this motion without prejudice as premature. (ECF No. 49.) Dorsey's present Motion renews his request for compassionate release. (Def.'s Moving Br. *3, ECF No. 54.)[1] In deciding the instant Motion, the Court relies on the arguments both in the original motion for compassionate release as well as those presented in the BOP Letter. The instant Motion before this Court is now ripe for adjudication.

## II. **LEGAL STANDARD**

A district court generally has limited authority to modify a federally imposed sentence once it commences. *See United States v. Epstein*, No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *Dillon v. United States*, 560 U.S. 817, 825 (2010). The Act, however, permits district courts to grant compassionate release where "extraordinary and compelling reasons" support a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides, in relevant part, that:

---

[1] Page numbers preceded by an asterisk refer to the page numbers atop the ECF header.

> (A) the court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction[.]

18 U.S.C. § 3582(c). As such, under the Act, a district court may grant a compassionate release motion "if the court finds that the sentence reduction is (1) warranted by extraordinary and compelling reasons; (2) consistent with applicable policy statements issued by the Sentencing Commission; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a) . . . ." *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) (internal quotations omitted) (citing 18 U.S.C. § 3582(c)(1)(A)). District courts are not bound "by the Commission's policy statement" for defendant-filed compassionate release motions. *Id.* at 259. But the policy statement provides guidance, as it lists examples of medical conditions that may qualify as extraordinary and compelling reasons. *See* U.S. Sent'g Guidelines Manual § 1B1.13, cmt. n.1(A)(i) (U.S. Sent'g Comm'n 2021) (reflecting that the standard is met if a defendant has a terminal illness, serious medical condition, or deteriorating health).

## III. DISCUSSION

At the outset, the Government does not contest that Dorsey's Motion may be considered by the Court, as Dorsey satisfied his administrative remedies requirement. (*See generally* Gov't's Opp'n Br.) The Court thus turns directly to the merits of Dorsey's Motion and addresses *first* whether he has demonstrated extraordinary and compelling reasons for release that are consistent

with any applicable policy statements; and *second*, whether the 18 U.S.C. § 3553(a) factors support a reduction in sentence.

      **A.**      **Dorsey Fails to Show Extraordinary and Compelling Reasons for Release.**

Dorsey raises several concerns in favor of finding extraordinary and compelling reasons for early release, all of which center around COVID-19. (*See generally* Def.'s Moving Br.) *First*, Dorsey explains how serious COVID-19 is and the high potential of community spread in FCI Bennettsville. (*Id.* at *11.) Dorsey cites to the infection and recovery rates within PCI Bennettsville and points to the number of deaths associated with COVID-19 across all federal inmates. (*Id.*) Dorsey goes into great detail describing staffing shortages across all federal prisons, noting that "teachers, librarians and even nurses" are expected to conduct law enforcement duties due to the numerous position vacancies. (*Id.* at *12-14.) Dorsey notes that the guards are sick, and they don't have the proper N-95 masks. (*Id.* at *16.) *Second*, Dorsey explains that he believes that he previously had COVID-19 (despite never being officially diagnosed), and he is concerned about the "long term damage" his prior infection may have on his body. (*Id.* at *21-22.) Specifically, Dorsey is concerned about organ damage, strokes/seizures, blood clots, fatigue, and PTSD. (*Id.* at *22-23.) Dorsey believes that his underlying conditions of obesity and hypertension may impact his life post-infection. (*Id.* at *24.) *Third*, Dorsey also argues that because of COVID-19, he has not been able to take advantage of rehabilitation programs that would have ultimately allowed him to reduce his sentence. (*Id.* at *26-27.) Putting it all together, Dorsey declares that he presents extraordinary and compelling reasons warranting a reduction in sentence.

Unsurprisingly, the Government disagrees. (*See generally* Gov't's Opp'n Br.) It argues that Dorsey's refusal to get vaccinated precludes Dorsey's reliance on COVID-19 as an extraordinary

4

and compelling reason warranting his release.[2] (*Id.* at 5.) Vaccination status aside, the Government argues that Dorsey's medical conditions do not rise to the level required for early release. (*Id.* at 6-7.) The Government concludes by arguing that the § 3553(a) sentencing factors decidedly cut against a reduction of Dorsey's sentence. (*Id.* at 8-11.)

Section 3582(c) does not define what constitutes "extraordinary and compelling reasons," so courts routinely look to the Sentencing Commission's policy statement governing sentence reductions. *United States v. Moe*, 571 F. Supp. 3d 267, 270 (D.N.J. 2021). Although the policy statement is not binding, it serves as a guide to help decipher the "extraordinary and compelling" language within the statute. *Andrews*, 12 F.4th at 260 ("[A]lthough the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons."). Under that policy statement, a defendant meets the standard on health-related grounds if he suffers from a terminal illness or if the defendant is:

> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S. Sent'g Guidelines Manual § 1B1.13, cmt. n.1(A)(i)-(ii). Subsection (d) of the Application Note to § 1B1.13, the catch-all provision, examines "extraordinary and compelling reason[s] other than, or in combination with," the other three categories. *Id.* cmt. n.1(D).

---

[2] In his Moving Brief, Dorsey explains his reservations with the COVID-19 vaccine and seems to state that he will not get vaccinated. (*See* Def.'s Moving Br. *20.). In his reply, however, Dorsey states that he has "learn[ed] the truth" about the vaccine and has requested to be vaccinated. (Def.'s Reply Br. *22, ECF No. 60.)

At this stage of the COVID-19 pandemic, numerous courts have addressed compassionate release motions premised on the risk of contracting the virus. *E.g., United States v. Cottle*, No. 18-0113, 2022 WL 1963658, at *3-4 (D.N.J. June 6, 2022) (addressing and denying a defendant's COVID-19 related compassionate release motion). It is settled that "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit." *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020). Equally clear is that a defendant's vaccination status does not automatically preclude a sentence reduction, but courts do consider it. *See, e.g., United States v. Thomas*, No. 21-2105, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) (affirming the district court's denial of compassionate release because the defendant's vaccination reduced health risks from the virus).

In evaluating Dorsey's proffered reasons, the Court finds that he fails to present extraordinary and compelling circumstances. For starters, to date, there are no inmates at FCI Bennettsville that are currently positive for COVID-19.[3] This militates against granting compassionate release. *United States v. Batista*, No. 18-415, 2020 WL 4500044, at *3 (D.N.J. Aug. 5, 2020) (denying compassionate release where the facility reported only a single positive case of COVID-19); *United States v. Jefferson*, No. 21-2020, 2021 WL 4279626, at *2 (3d Cir. Sept. 21, 2021) (affirming the denial of compassionate release where only a single incarcerated individual at the facility had the virus). Furthermore, Dorsey has not tested positive for the virus since his arrival at FCI Bennettsville. (Def.'s Moving Br. *21.) Given FCI Bennettsville's control over containing COVID-19 and the lack of evidence that the BOP is dilatory in its duties to protect individuals housed at this facility, this factor weighs against finding extraordinary and compelling

---

[3] *See* https://www.bop.gov/coronavirus/covid19_statistics.html.

reasons. *See United States v. Battle*, No. 21-2151, 2021 WL 4550925, at *2 (3d Cir. Oct. 5, 2021) (holding that defendant's hypertension and asthma did not equate to "extraordinary and compelling reasons" where infection rates were near zero at the facility and he was fully vaccinated).

To be sure, even if FCI Bennettsville did have several active COVID-19 cases, Dorsey fails to explain why he remains at risk of severe illness or death. *See, e.g., Roeder*, 807 F. App'x at 160-61 (per curiam) ("[T]he existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid . . . that sentence."); *United States v. Hannigan*, No. 19-373, 2021 WL 1599707, at *6 (E.D. Pa. Apr. 22, 2021) (denying compassionate release for a defendant who had diabetes, hypertension and sleep apnea because his risk of serious illness after the COVID-19 vaccination was "significantly reduced"); *United States v. Watkins*, No. 04-309, 2021 WL 1627765, at *2 (W.D. Pa. Apr. 27, 2021) (concluding that the COVID-19 vaccine meaningfully protected the defendant, who suffered from obesity and hypertension, and thus he failed to show extraordinary and compelling reasons for release). On the chance that Dorsey did not receive the COVID-19 vaccination as planned, the Court finds that Dorsey cannot both seek a reduction in sentence based on his fear of COVID-19 while also refusing to reduce his risk through vaccination. *See United States v. King*, 2021 WL 3783157, at *5 (D.N.J. Aug. 24, 2021). Thus, the remaining risks to Dorsey simply are not extraordinary and compelling. *See United States v. Moye*, 2020 WL 6273905, at *2 (S.D.N.Y. Oct. 26, 2020) (finding that a defendant with diabetes, hypertension, and asthma failed to present extraordinary and compelling reasons in fearing COVID-19).

### B.   The § 3553(a) Factors Do Not Weigh in Favor of Granting Dorsey Compassionate Release.

To be sure, even if Dorsey demonstrated "extraordinary and compelling reasons," the § 3553(a) factors that the Court must consider would still undermine his release.[4] Dorsey does little to address the sentencing factors, instead presenting his own reentry plan should the Court grant his Motion. (Def.'s Moving Br. *29-33.) The Government argues that releasing Dorsey with so much of his sentence remaining "is completely inconsistent with the way this Court applied the § 3553(a) factors at his original sentencing." (Gov't's Opp'n Br. 10.) It also contends that his offense as well as his conduct while on bond demonstrate that he is a risk to the community. (*Id.*) The Court finds that the § 3553(a) factors weigh against a reduction in Dorsey's sentence.

Dorsey's convicted offense as well as his conduct while on supervised release—that of threatening the passenger in his car and disclosing the identity of local police officers (Gov't's Opp'n Br. 2 n.1)—demonstrate that Dorsey remains a risk to the community. As Dorsey admits himself, he has not yet been able to take advantage of many of the programs at FCI Bennettsville that will aid him in his return to the community. (Def.'s Moving Br. *26-27.) Furthermore, Dorsey has a substantial portion of his sentence remaining, and reducing the sentence at this stage would be contrary to the § 3553(a) factors. *See King*, 2021 WL 3783157, at *5 (finding that if a defendant has served "less than half" of his sentence, that "militates against release"). In general, Dorsey

---

[4] The § 3553(a) sentencing factors are (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentences and sentencing ranges established for the defendant's crimes; (5) pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

fails to identify sentencing factors that support a reduction in sentence, nor can the Court identify any. So, the Court separately finds that a reduction in sentence is unwarranted under the sentencing factors.

IV. **CONCLUSION**

For the foregoing reasons, Dorsey's Motion for Compassionate Release is denied. An appropriate order will follow this Memorandum Opinion.

*/s/ Michael A. Shipp*
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE